23CA2171 Peo v Thompson 07-02-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2171
El Paso County District Court No. 23CR727
Honorable Jessica Curtis, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Aaron Drake Thompson,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE SULLIVAN
Pawar and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 2, 2026

---

Philip J. Weiser, Attorney General, Cata A. Cuneo, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Andrew Vierra, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Aaron Drake Thompson, appeals the judgment of conviction entered on a jury verdict finding him guilty of conspiracy to commit sexual assault (victim under fifteen) and criminal attempt to commit sexual assault on a child.  We affirm.

## I.    Background

¶ 2    In May 2022, an Internet Crimes Against Children (ICAC) task force posted an advertisement titled "Teach my stepdaughter a lesson" in the fetish encounters section of Locanto, a classified advertisement website.  Thompson initially responded to the post in January 2023, but no one from the ICAC replied.

¶ 3    Thomspon again responded to the post in February 2023, saying, "Seen your ad on locanto and I am interested.  What is her age[?]"  Detective Jason Darbyshire of the El Paso County Sheriff's Office, an ICAC task force member, replied by telling Thompson, "[Fourteen], if you are interested still."

¶ 4    As the conversation continued and the two coordinated meeting in person, Thompson asked about condoms and whether penetration was allowed.  Darbyshire confirmed that penetration was allowed and asked Thompson to bring condoms.  Thompson said he always kept two in his wallet.  Thompson also requested a

photo of the child and asked Darbyshire to send him an email about a "sub contract job in case my wife starts asking me questions." Darbyshire provided both and then gave Thompson directions to an address that he provided.

¶ 5 When Thompson arrived at the address, Darbyshire sent a text message stating, "Confirm," to the phone number that he had been communicating with. Upon arrest, Thompson had two condoms in his wallet. Thompson submitted to an interview with law enforcement and consented to a search of his cell phone. The final incoming text message on his phone said, "Confirm."

¶ 6 The prosecution charged Thompson with conspiracy to commit sexual assault (victim under fifteen) and criminal attempt to commit sexual assault on a child.

¶ 7 Thompson's defense, during the interview and at trial, was that he feared a child was in danger when he saw the post and was trying to help her by gathering more information. He said his own daughter had been sexually assaulted but that he was worried about contacting the police without sufficient information.

¶ 8    The jury found Thompson guilty on both counts.  The district court sentenced Thompson to four years of sex offender intensive supervised probation.

## II.    False Testimony

¶ 9    Thompson contends that the prosecution violated his right to due process by eliciting false testimony from Darbyshire.  For their part, the People contend that Thompson's argument is better characterized as a prosecutorial misconduct argument and that the prosecution committed no such misconduct.  We address this contention as framed by Thompson but perceive no basis to reverse.

### A.    Additional Background

¶ 10    While cross-examining Darbyshire, defense counsel sought to admit evidence about an allegedly exculpatory draft text message that Thompson had written on his phone before arriving at the address provided by Darbyshire.  After considering arguments from both sides, the court allowed the defense to introduce a screenshot of part of the draft text message based on the parties' stipulation.  The visible portion of the draft text showed that it was addressed to "Jimmy" and said, "I answered an ad about punishing a stepdaughter.  I answered because if I felt like it . . . ."

¶ 11     After Darbyshire's testimony, a juror asked, "Can we see the whole text message draft to Jimmy?  Or was that the full message and was never completed?"  The court and the parties agreed, based on the prior stipulation, that "what they see is what is available."  The court asked Darbyshire the juror's question:

> THE COURT: Detective, Defense Exhibit B is what was visible — all that is visible to law enforcement?
>
> [DARBYSHIRE]: That is correct, yes.
>
> THE COURT: So if there was any continuation of that message, it's not viewable?
>
> [DARBYSHIRE]: I personally was not able to view it, no.

¶ 12     The prosecution then asked Darbyshire the following questions:

> [PROSECUTOR]: It's also — we're referring to it as a draft, right?
>
> [DARBYSHIRE]: That is correct, yes.
>
> [PROSECUTOR]: And so potentially that could just be where the message stops and the writer just never finished it?
>
> [DARBYSHIRE]: That is a potential, yes.
>
> [PROSECUTOR]: All right.  Thank you.

[DEFENSE COUNSEL]: May we approach, Your Honor?

THE COURT: Sure.

(Whereupon, a Bench discussion was held.)

[DEFENSE COUNSEL]: I'm just want[ing] to confirm the next question that I'm not opening the door to anything. My question would be, "Is it true that you had possession of this phone since that night?"

¶ 13    The court ultimately disallowed defense counsel's proposed additional question to Darbyshire.

### B.    Applicable Law and Standard of Review

¶ 14    The due process clauses of the United States and Colorado Constitutions prohibit the prosecution from obtaining convictions using false evidence. *See* U.S. Const. amend. XIV; Colo. Const. art. II, § 25; *Glossip v. Oklahoma*, 604 U.S. 226, 246 (2025); *DeLuzio v. People*, 494 P.2d 589, 593 (Colo. 1972). This prohibition extends to the prosecution making false or misleading claims or eliciting testimony that it knows is false. *Glossip*, 604 U.S. at 246; *People v. Dunlap*, 124 P.3d 780, 807 (Colo. App. 2004). "False testimony, when knowingly used, or when used recklessly or without regard or inquiry as to the truth of the facts asserted, dictates that a reversal occur." *DeLuzio*, 494 P.2d at 593.

¶ 15     A defendant asserting that the prosecution knowingly presented perjured testimony must show that (1) the prosecution's case included perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) the perjury was material. *People v. Medina*, 260 P.3d 42, 48 (Colo. App. 2010).

¶ 16     A person commits perjury in the first degree if in any official proceeding they knowingly make a materially false statement, which they don't believe is true, under an oath required or authorized by law. § 18-8-502(1), C.R.S. 2025.

¶ 17     Although defense counsel asked to approach after the prosecution's questioning of Darbyshire, counsel didn't object, raise the due process issue, or move to strike the question or answer. Thus, our review is limited to plain error. *See People v. Clark*, 2015 COA 44, ¶ 166; *see also People v. Coughlin*, 304 P.3d 575, 581-82 (Colo. App. 2011) ("In order to properly preserve an objection to evidence admitted at trial, a timely and specific objection must appear in the trial court record." (quoting *Am. Fam. Mut. Ins. Co. v. DeWitt*, 218 P.3d 318, 325 (Colo. 2009))); *People v. Ujaama*, 2012 COA 36, ¶ 37 (objecting on a different ground than the one raised on appeal isn't sufficient to preserve an objection). Plain error is

6

error that is "obvious and seriously prejudicial, meaning that it 'undermine[s] the fundamental fairness of the trial itself [so] as to cast serious doubt on the reliability of the conviction.'" *People v. Campos*, 2015 COA 47, ¶ 29 (quoting *Ujaama*, ¶ 43).

## C. Analysis

¶ 18 We discern no error, plain or otherwise, in the district court allowing the prosecution to ask Darbyshire about the content of the draft text message. Thompson argues that the prosecutor elicited testimony that the *prosecutor* knew was misleading. Even if true, such conduct wouldn't constitute perjured testimony *by Darbyshire*. And Thompson doesn't point us to, nor does our independent review reveal, any evidence in the record showing that the draft text message continued or that the prosecutor knew it continued. Given this, Thompson hasn't established any of the three *Medina* factors. Moreover, Darbyshire had previously testified that he wasn't able to view any continuation of the draft text message, so the jury would have known that he was speaking hypothetically when he agreed with the prosecution that the draft message could "potential[ly]" stop where it was no longer viewable. As a result, we perceive no due process violation requiring reversal.

¶ 19    We don't address prosecutorial misconduct because Thompson never argued that the prosecutor's questioning amounted to prosecutorial misconduct, nor does he assert a prosecutorial misconduct argument on appeal.

### III.    Limits on Cross-Examination

¶ 20    Thompson contends that the district court erred by limiting his cross-examination of Darbyshire in violation of his constitutional right to confront adverse witnesses and CRE 403. We aren't persuaded.

### A.    Additional Background

¶ 21    After the juror's question and the prosecution's follow-up questions to Darbyshire, *see supra* Part II.A, the parties and the court discussed whether defense counsel could further cross-examine Darbyshire about the extent of his investigation. Specifically, defense counsel sought to ask, "Is it true that you had possession of this phone since that night?"  The court rejected defense counsel's request for further questioning, saying, "[W]hat we know is what's in this image and it's listed as a draft and it cuts off right there.  So the representation is that that's all that they know of as well."

¶ 22    In so ruling, the court leaned on the prosecution's prior concerns under CRE 403.  In particular, the screenshot of the text message had been pulled from a report generated by the Department of Homeland Security (DHS).  Although the prosecution said Darbyshire had reviewed the DHS report, he wasn't aware of the "entire" contents of the draft text message.  According to the prosecution, Darbyshire also couldn't testify about the cell phone data extraction process or how the DHS report was generated because he wasn't an expert witness and couldn't lay a proper foundation.  Consequently, the prosecution didn't intend to introduce evidence regarding the cell phone data extraction.

¶ 23    The court worried that permitting the defense's additional question could create the "potential inference" that law enforcement had conducted an inadequate investigation.  And the prosecution would have "no way to address that."  The court added that "it was incumbent on [the defense] to have a witness [who] could lay the proper foundation" if they wanted to elicit testimony about the contents of Thompson's phone.

¶ 24    While defense counsel didn't cite any specific rule as support for their requested questioning, they argued that the prosecution's

earlier question to Darbyshire about the draft text message possibly "just end[ing] there" had "undermine[d] fundamental fairness."

## B. Confrontation

¶ 25    We first address, and reject, Thompson's contention that the district court violated his constitutional right to confrontation by preventing further cross-examination of Darbyshire regarding the length of time that law enforcement possessed Thompson's phone.

### 1. Applicable Law and Standard of Review

¶ 26    The Confrontation Clauses of the United States and Colorado Constitutions guarantee a criminal defendant's right to cross-examine prosecution witnesses. *See* U.S. Const. amend. VI; Colo. Const. art. II, § 16; *Campos*, ¶ 27. To safeguard this right, a court may not "limit excessively a defendant's cross-examination of a witness regarding the witness' credibility, especially cross-examination concerning the witness' bias, prejudice, or motive for testifying." *Campos*, ¶ 27 (quoting *Merritt v. People*, 842 P.2d 162, 167 (Colo. 1992)).

¶ 27    "The question in determining whether a restriction on cross-examination runs afoul of the constitutional right of confrontation is whether a "'reasonable jury might have received a

10

significantly different impression of a witness's credibility" had the court not erroneously excluded otherwise appropriate evidence.'" *People v. Dunham*, 2016 COA 73, ¶ 40 (quoting *Krutsinger v. People*, 219 P.3d 1054, 1061 (Colo. 2009)).

¶ 28　We review de novo whether a trial court violated a defendant's right to confront adverse witnesses. *People v. Carter*, 2015 COA 24M-2, ¶ 28. But because Thompson didn't raise the constitutional right to confrontation as a basis for allowing his requested cross-examination, our review is again limited to plain error. *See People v. Jaeb*, 2018 COA 179, ¶¶ 8-9 (evidentiary objection insufficient to preserve Confrontation Clause claim).

### 2.　Analysis

¶ 29　We perceive no error under the federal or Colorado Confrontation Clauses, let alone plain error, in the district court's limitation on defense counsel's cross-examination of Darbyshire. True, defense counsel's requested cross-examination related to Darbyshire's credibility because it sought to probe the adequacy of his investigation — a proper topic for cross-examination. But we can't conclude on this record that the additional questioning would

11

have led the jury to have a *significantly* different impression of Darbyshire's credibility. *See Dunham*, ¶ 40.

¶ 30 The court disallowed a single question requested by the defense regarding the length of time that law enforcement possessed Thompson's phone. And during closing argument, defense counsel was still able to argue based on the admitted evidence that Darbyshire performed an inadequate investigation, including by failing to follow up on leads found in Thompson's phone. They argued as follows:

> Now, what we are asking you to focus on is the lack of . . . a thorough investigation here.
>
> . . . .
>
> Why was there not a thorough investigation? Why was there not an investigation of innocence here? A person shows up, sends some text messages, has some condoms on him. That's it. End of story.
>
> . . . .
>
> He talked about a note in his phone that put out exactly what his intentions were. We saw what that was. It was a draft message to a person named Jimmy. We have no idea who Jimmy is. You guys didn't hear from a Jimmy, we didn't hear from a Jimmy, nobody knows about Jimmy. We also only saw a glimpse of this text message. This screenshot that we all saw.

. . . .

> But the better question here is why then would the lead detective whose job it is to follow up on all leads did not?

¶ 31　Given this argument, we don't see how further questioning about the adequacy of Darbyshire's investigation or the length of time that law enforcement possessed Thompson's phone would have given the jury a significantly different impression of Darbyshire's credibility.

¶ 32　Accordingly, the district court didn't violate Thompson's right to confrontation by limiting his cross-examination of Darbyshire.

### C.　CRE 403

¶ 33　We next turn to Thompson's contention that the district court's limitation on his cross-examination of Darbyshire violated CRE 403.

#### 1.　Applicable Law and Standard of Review

¶ 34　A trial court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."　CRE 403.

¶ 35     We review a trial court's decision on the admissibility of

evidence for an abuse of discretion. *People v. Phillips*, 2012 COA

176, ¶ 63. "A court abuses its discretion when its decision is

manifestly arbitrary, unreasonable, or unfair, or based on a

misunderstanding or misapplication of the law." *People v. Miller*,

2024 COA 66, ¶ 40.

## 2.    Analysis

¶ 36     We conclude the district court didn't abuse its discretion

under CRE 403 by limiting defense counsel's cross-examination of

Darbyshire. The court precluded counsel's question to Darbyshire

about the length of time that law enforcement possessed

Thompson's phone because a different officer, a DHS digital

forensics analyst, had extracted the cell phone's data but wasn't

subpoenaed as a witness for trial. The court expressed concern

that permitting the defense's additional question could create the

misleading impression, which the prosecution couldn't rebut, that

law enforcement had conducted an inadequate investigation.

¶ 37     We can't say that the balance the court struck — permitting

Thompson to introduce and ask Darbyshire questions about the

screenshot of the draft text message but disallowing questions that

would create an inference that law enforcement didn't investigate the phone — constituted an abuse of discretion. Rather, the court's solution fell within the "range of reasonable options" by permitting defense counsel to elicit testimony about the draft text message without creating the misimpression that law enforcement neglected to investigate the phone's contents. *People v. Genrich*, 2025 COA 49M, ¶ 25.

¶ 38     Accordingly, the district court didn't abuse its discretion under CRE 403 by limiting Thompson's cross-examination of Darbyshire.

## IV.    Evidence Envelope

¶ 39     Thompson contends that the district court abused its discretion under CRE 403 by admitting an evidence envelope with a prejudicial label. We aren't persuaded.

### A.    Additional Background

¶ 40     At trial, the prosecution sought to introduce the two condoms that arresting officers found in Thompson's wallet. The condoms were inside an envelope that contained a label with the phrase "Offense: Sexual Assault on a Child," among other case-related information. A detective testified that he created the label, placed it

15

on the envelope, and placed the two condoms in the envelope while collecting evidence.

¶ 41　Defense counsel asked that the label be redacted as unfairly prejudicial under CRE 403. The prosecution responded that they "would have been happy" to address the label issue before trial but weren't on notice of the defense's objection in this case. The prosecution added that jury knew no actual sexual assault on a child occurred and that "[n]obody's arguing" otherwise. The district court overruled the objection, noting that the detective testified that he recognized his "markings" on the envelope and that the jury would understand that words printed on an envelope are "not truth or fact."

### B.　Applicable Law and Standard of Review

¶ 42　As before, a trial court may exclude otherwise relevant evidence if the danger of unfair prejudice substantially outweighs its probative value. CRE 403. We review a trial court's ruling on a CRE 403 objection for an abuse of discretion. *People v. Gonzales-Quevedo*, 203 P.3d 609, 615 (Colo. App. 2008).

## C. Analysis

¶ 43    For two reasons, we conclude that the district court didn't abuse its discretion by overruling Thompson's objection to the envelope label.

¶ 44    First, the unredacted label bore some relevance because it allowed the detective to establish a complete chain of custody for the two condoms. Indeed, the detective testified that he created and placed the label on the envelope, which he said was in the same or substantially the same condition as when he last viewed it. *See People v. Valencia,* 257 P.3d 1203, 1206 (Colo. App. 2011) ("Normally, to establish that [relevancy] connection, it is necessary to present evidence showing a complete chain of custody of the item.").

¶ 45    Second, based on the evidence, the verdict forms, and the court's jury instructions — including its instructions on the sole charges of conspiracy to commit sexual assault (victim under fifteen) and criminal attempt to commit sexual assault on a child — the jury would have understood that Thompson wasn't charged with a completed sexual assault on a child. *See People v. McKeel,*

246 P.3d 638, 641 (Colo. 2010) (we presume that jurors follow the instructions that they receive).

¶ 46    Accordingly, the district court didn't abuse its discretion by overruling Thompson's objection to the envelope label.

## V.    Cumulative Error

¶ 47    Thompson contends that, even if no single contention of error individually warrants reversal, the cumulative effect of the district court's errors denied him a fair trial.  To warrant reversal under the cumulative error doctrine, a reviewing court must identify multiple errors that collectively prejudiced the defendant's substantial rights.  *Howard-Walker v. People*, 2019 CO 69, ¶ 25.  Because we haven't identified any errors, the cumulative error doctrine isn't implicated.  *See People v. Grant*, 2021 COA 53, ¶ 76.

## VI.    Disposition

¶ 48    We affirm the judgment.

JUDGE PAWAR and JUDGE MEIRINK concur.